# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

**KIMBERLY BORGES**

   **-v-**                          **3:04CV324(DJS)(TPS)**

**SEABULK INTERNATIONAL, INC.**
**f/k/a HVIDE MARINE INC.,**
**INTEROCEAN MANAGEMENT**
**CORPORATION, and THE SS HMI**
**DIAMONDS SHOALS,** *In Rem*

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case concerns personal injuries suffered by the plaintiff, Kimberly Borges, while working as a merchant seaman on the S.S. HMI Diamond Shoals, a large "product tanker." The vessel is owned by Defendant Seabulk International Inc. ("Seabulk"), as the agent for Lightship Tankers V, LLC, and operated and managed by Defendant Interocean Management Corporation ("Interocean"). The defendants have filed a motion for summary judgment as to plaintiff's claims based on (1) unseaworthiness and (2) negligence. The motion is before the court pursuant to 28 U.S.C. § 636(c). (See Dkt. #39.)

## I.  SUMMARY OF FACTS

The court must view all the evidence presented by the moving party in the light most favorable to the nonmoving party.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Viewing the facts in the light most favorable to the plaintiff, the record alleges the following events.  The plaintiff began working as the Chief Mate on the S.S. HMI Diamond Shoals in July of 1998, while the vessel was at the shipyard in Newport News, Virginia.  As Chief Mate, the plaintiff was second in command on the vessel.  On March 4, 2001, while in service as the Chief Mate, the plaintiff was injured while conducting an annual inspection inside the forepeak ballast tank.  During the interior inspection of the tank, the plaintiff walked from the starboard side of the tank to the port side in order to retrieve a piece of plastic. After the plaintiff turned around to begin her walk back across the tank, she fell into one of many "lightening holes" in the horizontal framing of the tank. The plaintiff has described a lightening hole as approximately the size of a manhole, with "nothing around them to prevent stepping into one of them." (Pl.'s Dep. at 44). According to the plaintiff, the holes are scattered all over the deck in order to "allow water to come up from the lower level of the forepeak...into the next level." <u>Id.</u> Although there were two other crew members inside the tank and one crew member directly outside the tank at the time of the accident, none of them were able to witness the plaintiff fall into the lightening hole.

-2-

The plaintiff was removed from the tank after the accident and brought ashore for medical treatment upon complaining of pain in her rib cage area.  The physician's initial report stated that the plaintiff suffered no fractures, and was authorized to return to work in a "light duty" condition.  The plaintiff returned to work in a light duty role but continued to suffer pain in her right chest and neck area. The plaintiff has continued to seek medical and chiropractic treatment since the accident, and has since been diagnosed with four unevenly healed ribs which were broken in the original fall. The uneven healing of the ribs has caused reoccurring pain in her back and other parts of her body.

The plaintiff filed the complaint in this action on February 26, 2004, seeking damages for (1) negligence under the Jones Act, 46 App. U.S.C. §688; (2) unseaworthiness of the vessel; (3) maintenance and cure; and (4) punitive damages. The defendants denied all of the plaintiff's claims and filed a Motion for Summary Judgment as to the negligence and unseaworthiness claims.

## II.  STANDARD OF REVIEW

The standards governing summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "An issue of fact is 'genuine' where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Giordano v. City of New York, 274 F.3d 740, 746 (2d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" Id. at 746-47. If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996). All factual inferences are to be drawn in favor of the party against whom summary judgment is sought. Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989).

### III.  DISCUSSION

#### A.  Negligence Claim under the Jones Act, 46 App. U.S.C. § 688

In her complaint, the plaintiff seeks to recover under the Jones Act, 46 App. U.S.C. § 688, for damages for personal injuries she sustained as a result of the defendants' alleged negligence while the plaintiff was working as a merchant seaman

-4-

on the defendants' vessel. The Jones Act was enacted in 1920 to create a negligence cause of action for ship personnel against their employers. California Home Brands, Inc. v. Ferreira, 871 F.2d 830, 833 (9th Cir. 1989). The Act extends to seamen and women the same rights accorded railway workers under the Federal Employers Liability Act ("FELA"). American Dredging Co. v. Miller, 510 U.S. 443, 455-56 (1994); Johannessen v. Gulf Trading & Transp. Co., 633 F.2d 653, 656 (2d Cir. 1980). The Act therefore "places...a duty on the [shipowner] to provide a reasonably safe workplace." Oxley v. City of New York, 923 F.2d 22, 25 (2d Cir. 1991) (citing Mahnich v. Southern S.S. Co., 321 U.S. 96, 102-03 (1944).

The standards of proof for negligence and causation under the Jones Act are the same as that of the FELA. American Dredging, 510 U.S. at 455-56; Johannessen, 633 F.2d at 656. As the Second Circuit recently stated, "the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at common law." Tufariello v. Long Island R.R. Co., 458 F.3d 80, 87 (2d Cir. 2006). Under FELA, and by extension, the Jones Act, an employer has "a duty to provide its employees with a safe workplace," which it has breached "if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect

its employees." Id. (quoting Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 (2d Cir. 1996)).

As compared to a common law negligence action, however, "the standard of proof for causation when asserting negligence under the Jones Act is relaxed, sometimes termed "featherweight." Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 210 (3d. Cir. 1993). In order to sustain their burden on summary judgment, the defendants' must show an absence of evidence that could "'justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury.'" Wills v. Amerada Hess Corp., 379 F.3d 32, 50 (2d. Cir. 2004)(emphasis in original)(quoting Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 506 (1957). As such, an employer may be held liable under FELA and the Jones Act "for risks that would otherwise be too remote to support liability at common law." Ulfik, 77 F.3d at 58. Furthermore, in Jones Act cases "[t]he right of the jury to pass upon the question of fault and causation must be most liberally viewed." Oxley, 923 F.2d at 25 (quoting Johannessen, 633 F.2d at 656.

With these principles in mind, the court finds that there are material fact issues in this case that cannot be resolved at the summary judgment stage and must therefore be submitted to the trier of fact. First, there is an issue of material fact as to

whether the defendants' duty to provide a reasonably safe workplace was breached by not providing intrinsically safe droplights inside the ballast tank. The plaintiff contends that intrinsically safe droplights were provided to sister vessels owned and operated by the defendants, that these lights would have dramatically changed the visibility of the space, that no other drop lights can be used aboard product tankers due to the combustible nature of the cargo, and that she complained to the Captain on multiple occasions regarding the lack of lights. There is a material fact issue as to whether the defendants' duty to provide a reasonably safe workplace required installation of lights inside the ballast tank.

Second, under the relaxed standard on causation applicable to the Jones Act, there is a genuine issue of material fact as to whether the failure to provide the lights played a part in causing the plaintiff's injuries. Although the plaintiff, as the defendants' point out, saw some of the lightening holes while inside the tank, she stated in her deposition that she "probably [would] not" have fallen in a lightening hole if the droplights had been available. (Pl.'s Dep. at 115). Thus, there is a material fact issue as to whether the lack of lighting inside the tank played "a part, even the slightest," Amerada Hess, 379 F.3d at 50, in causing the plaintiff's injuries.

In addition, the court notes that the plaintiff's failure to provide expert testimony on causation is not fatal. Expert testimony "'usually is necessary to establish a causal connection between an injury and its source unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile.'" <u>Tufariello</u>, 458 F.3d at 89 (quoting <u>Simpson v. Northeast Ill. Reg'l Commuter R.R. Corp.</u>, 957 F.Supp. 136, 138 (N.D. Ill. 1997)). Here, the court finds that a layman could easily establish the causal connection between the alleged insufficient lighting in the ballast tank and the injuries suffered by the plaintiff while attempting to navigate around the lightening holes in the tank's framing, and thus expert testimony is unnecessary. Accordingly, the defendants' Motion for Summary Judgment as to the claim of negligence under the Jones Act is **DENIED**.

**B.  <u>Unseaworthiness Claim</u>**

The plaintiff's complaint also contains a cause of action for failure to furnish a seaworthy vessel. The Supreme Court has made clear that a ship owner is strictly liable for personal injuries caused by his or her vessel's "unseaworthiness." <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539, 549 (1960). A vessel is unseaworthy if the vessel, crew and appurtenances are not "reasonably fit for their intended use." <u>Id.</u> at 550. "The

standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Id.  The condition of unseaworthiness is a question of fact that generally should not be resolved by the court as a matter of law.  Cook v. American S.S. Co., 53 F.3d 733, 742 (6th Cir. 1995)

In the instant case, the plaintiff asserts that the proper safety equipment, in the form of intrinsically safe droplights, was not provided, and that the failure to provide these lights was the proximate cause of her injuries.  She also alleges that intrinsically safe droplights were provided to sister vessels owned and operated by the defendants, and that no other lights could have been used onboard the tanker due to the combustible nature of the cargo.  Neither of these two assertions have been contested by the defendants, and all factual inferences are to be drawn in favor of the party against whom summary judgment is sought.  Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989).  As the Second Circuit has noted, "[a] ship is considered to be unseaworthy when it is 'insufficiently or defectively equipped.'" Oxley v. City of New York, 923 F.2d 22, 25 (2d Cir. 1991) (quoting Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 726 (1967); see Poignant v. United States,

225 F.2d 595, 598 (2d Cir. 1955).   On the record before the court, a reasonable jury could conclude that the vessel was rendered unseaworthy by the lack of droplights in the ballast tank.

There are also material fact issues as to whether the alleged unseaworthiness of the vessel was the proximate cause of the plaintiff's injuries.   To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's unseaworthy condition was the proximate cause of his or her injuries.   Miller v. Am. President Lines, Ltd., 989 F.2d 1450, 1463-64 (6th Cir. 1993). A vessel's unseaworthiness is the proximate cause of a plaintiff's injuries if it was a substantial factor in causing such injuries.   Id. at 1464. In other words, unseaworthiness proximately causes an injury if it "'played a substantial part in bringing about or actually causing the injury and the injury was either a direct result or a reasonably probable consequence of unseaworthiness.'"   Id. (quoting Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir. 1988)).   Whether the alleged failure to properly equip the vessel was the result of negligence on the defendants' part is irrelevant. Barlas v. United States, 279 F.Supp.2d 201, 206 (S.D.N.Y. 2003).   On the record before the court, there is a genuine issue of material fact as to whether the alleged unseaworthiness was the proximate cause of the

-10-

plaintiff's injuries.  Although the plaintiff was able to see
some of the lightening holes while walking across the horizontal
framing of the tank, she stated in her deposition that she
"probably [would] not" have fallen in a lightening hole if the
droplights had been available. (Pl.'s Dep. at 115). Therefore,
the defendants' Motion for Summary Judgment as to the claim of
unseaworthiness is **DENIED.**

## C. Primary Duty Rule as a Bar to Recovery

With regard to the defendants' contention that the primary
duty doctrine precludes recovery on both the negligence and
unseaworthiness claims, the court does not agree. The Primary
Duty Rule, or *Walker* doctrine, arises from Judge Learned Hand's
opinion in <u>Walker v. Lykes Brothers S.S. Co.</u>, 193 F.2d 772 (2d
Cir. 1952).  Under this rule, a supervising seaman cannot recover
for his injuries when he breaches "a duty which the injured
person has consciously assumed as a term of his employment." <u>Id.</u>
at 774.  When applicable, the Primary Duty Rule therefore acts as
an absolute bar to a seaman's recovery under the Jones Act.  <u>Id.</u>
At the outset, the court notes the questionable continued
validity of the *Walker* doctrine in this Circuit.  <u>See</u> <u>Lombas v.</u>
<u>Moran Towing & Transp. Co.</u>, 899 F.Supp. 1089 (S.D.N.Y. 1995);
<u>McSpirit v. Great Lakes Int'l</u>, 882 F.Supp 1430, 1432 (S.D.N.Y.
1995) (noting that "*Walker's* continuing viability is doubtful").

-11-

In <u>Dunbar v. Henry Du Bois' Sons Co.</u>, Inc., 275 F.2d 304, 306 (2d Cir.), <u>cert. denied</u>, <u>364 U.S. 815</u>,(1960), two of the three judges on a panel of the Court of Appeals expressly rejected the *Walker* doctrine as "incompatible with the congressional mandate that contributory negligence and assumption of risk shall not bar recovery in a Jones Act case." <u>Id.</u> at 306.

Even if the Primary Duty Rule remains viable in this Circuit, the court finds little merit in its application to this case at the summary judgment stage. As the defendants' themselves point out in their motion, the Primary Duty Rule acts as an absolute bar to recovery by a ship's officer "when there is no other cause of the officer's injuries other than the officer's breach of his consciously assumed duty to maintain safe conditions aboard the vessel." <u>Wilson v. Maritime Overseas Corp.</u>, 150 F.3d 1, 11 (1st Cir. 1998). "As Judge Hand noted in *Walker,* the bar is not based on the contributory negligence of the officer, but on a finding of no negligence of the employer." <u>Kelley v. Sun Transp. Co.</u>, 900 F.2d 1027, 1031 (7th Cir. 1990). According to the plaintiff, it is the responsibility of the Master to the Port Captain to get a piece of equipment "that is not in place that is essential for the operation of that vessel," (Pl.'s Dep. at 116), and she recommended to the Captain that they should get a number of items that previous vessels to leave the

-12-

shipyard possessed, including intrinsically safe droplights. There is a genuine issue of material fact as to whether the plaintiff's consciously assumed duty, as the seaman primarily responsible for safety on the ship, extended to furnishing the vessel with specific equipment that the owner had not supplied despite repeated requests. Moreover, there is sufficient evidence for a reasonable jury to conclude that the plaintiff's injuries were in fact a result of the defendants' breach of their own duty to provide their employees with a safe workplace and/or a seaworthy vessel. Under either scenario, the Primary Duty Rule would be inapplicable. Therefore, the Primary Duty Rule cannot act as a bar to the plaintiff's claims at the summary judgment stage, and its applicability must be submitted to the trier of fact.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **DENIED** on both counts.

**Dated at Hartford, Connecticut, this 17th day of October, 2006.**

                              **/s/ Thomas P. Smith**
                              **Thomas P. Smith**
                              **United States Magistrate Judge**